NOT DESIGNATED FOR PUBLICATION

No. 123,496

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
CARL E. BENGSTON JR.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 17, 2021. Affirmed.

*Nicholas L. Oswald*, of Hutchinson, for appellant.

*Jerry C. Edwards*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ISHERWOOD, J., and MCANANY, S.J.

PER CURIAM: Carl E. Bengston Jr. contends there was insufficient evidence to support the district court's finding at the conclusion of a bench trial that he was a sexually violent predator under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq. Viewing the evidence in the light favoring the State, and without interjecting ourselves into issues regarding the credibility of the witnesses, issues properly left to the trial judge who observed the witnesses in their testimony, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Bengston was a sexually violent predator. Accordingly, we affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

In July 1988, Bengston was convicted of sexual assault of a child in Dodge County, Nebraska. After Bengston was released from custody in Dodge County, he was

1

convicted in Reno County, Kansas, of public indecency, window peeping, committing lewd acts, and lewd and lascivious behavior.

In June 2016, Bengston was scheduled to be released from the Hutchinson Correctional Facility where he was imprisoned for a 2009 felony conviction for lewd and lascivious behavior. In anticipation of Bengston's release, the State brought this action under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq. (KSVPA), to have Bengston declared a sexually violent predator and to order him to be placed in State custody for treatment in a secure facility.

The district court found there was probable cause to believe that Bengston met the criteria of a sexually violent predator and set the matter for a hearing. Bengston was ordered to undergo an evaluation at Larned State Security Hospital to determine whether he suffered from a mental abnormality or personality disorder that would increase the likelihood he would engage in repeat acts of sexual violence and whether he had serious difficulty controlling his dangerous behavior.

At Bengston's request, the court ordered an independent psychological evaluation. After a couple of false starts, the parties agreed to have Dr. Mark Goodman conduct the evaluation. It is unclear whether Dr. Goodman actually did so. No report from him was introduced into evidence at trial, and he did not testify.

At the bench trial, the State called Bengston to testify along with Dr. Mitchell Flesher and Dr. Carol Crane. Bengston presented no evidence in his defense. Here is a summary of the testimony, viewed in the light favoring the State, the prevailing party, as we are required to do.

*Bengston's testimony*

Bengston admitted to having a long list of criminal charges and convictions, including his conviction of sexual assault of a child in Dodge County, Nebraska. He was later convicted five times for public indecency between 1983 and 1996; four times for window peeping between 1985 and 1998; and two times for lewd and lascivious behavior in 1998 and 2009, one of which involved three children.

Bengston had participated in a sexual offender treatment program (SOTP) three times. He stated in a questionnaire that during his lifetime he had about 10 sexual victims and he guessed that he indirectly affected between 500 and 1,500 people through a "ripple effect" of victimization. He used window peeping and flashing as a release for emotional pressure and frustration and exposed himself in public "all over town."

*Dr. Flesher's testimony*

Dr. Mitchell Flesher, a licensed psychologist, had conducted about 1,000 sexually violent predator evaluations. He prepared a forensic evaluation report on Bengston, using actuarial instruments such as the Static-99, the Stable-2007, and the Acute-2007. He testified that the instruments he used to evaluate Bengston were reliable, tested, peer reviewed, based on empirically sound scientific principles, and widely accepted by psychologists and other mental health professionals to determine whether someone is a sexually violent predator.

Dr. Flesher diagnosed Bengston with exhibitionistic disorder, voyeuristic disorder, and antisocial personality disorder. Based on interviewing Bengston and reviewing his records, Bengston exhibited a repetitive pattern of exhibitionistic and voyeuristic behaviors. While Bengston had only one conviction for a contact offense, he told Dr.

Flesher that he had four sexual contact offenses against preschool age victims which did not lead to convictions.

There were other factors that increased Bengston's risk of reoffending. Dr. Flesher opined that Bengston's mental abnormalities and personality disorders made it likely for him to engage in repeat acts of sexual violence based on results from the actuarial instruments. On the Static-99 test Bengston scored well above average for having a risk of sexual offense recidivism. The Stable-2007 instrument placed Bengston in a category for high treatment needs. His Stable-2007 score stemmed from evidence of general social rejection, his impulsivity, his poor problem solving, his sex drive, his problems cooperating with supervision, his difficulty with significant social influences, his capacity for relationship stability, and his deviant sexual preferences.

Dr. Flesher opined that Bengston was more than seven times as likely to engage in future acts of sexual violence than the average sex offender. Bengston's previous participation in SOTPs were not helpful as he reoffended despite completing the programs. It was apparent to Dr. Flesher that Bengston had serious issues controlling his behavior.

*Dr. Crane's testimony*

Dr. Carol Crane, a licensed psychologist, had prepared about 800 clinical service reports to assess an offender's future risk of reoffending. Dr. Crane used the Static-99, Static-2002R, and the revised violence risk appraisal guide (VRAG-R) to evaluate Bengston. She testified that these instruments were reliable, tested, peer reviewed, based on empirically sound scientific principles, and were widely accepted tools for identifying individuals at risk of sexual misconduct. The Static-99 reports provided imperfect statistics but overall provided valid and useful information. The Static-99 considered general criminality and was also informative of risk from a sexual perspective.

4

Bengston had a repeated and sustained level of criminal behavior since 1978. Bengston suffers from antisocial personality disorder, exhibitionist disorder, voyeuristic disorder, pedophiliac disorder, and fetishism. Bengston has had four contact victims under the age of nine, and testing showed he was most sexually responsive to the youngest age group of females. The younger the children, the more predictive pedophiliac interest is, and Bengston's youngest contact victim was a two-year-old female. Dr. Crane explained an individual cannot grow out of a pedophiliac condition.

Dr. Crane opined Bengston's diagnoses have been shown to be predictive of risk and, together, his diagnoses exponentially compound in terms of risk. She concluded that Bengston had an increased likelihood to reoffend sexually as all three actuarial instruments used to evaluate him identified him at the highest level of risk.

Dr. Crane determined that Bengston's mental abnormalities and personality disorders predisposed him to engage in sexual violence to such a degree that he posed a menace to public health and safety. Moreover, having one conviction for a contact offense did not reduce Bengston's risk of engaging in future acts of sexual violence. Even considering Bengston's age, he still presented a well above average risk.

*The District Court's Ruling*

The district court found Bengston to be a sexually violent predator pursuant to K.S.A. 2020 Supp. 59-29a07(a). Bengston had been previously convicted of a sexually violent offense and was diagnosed with multiple mental abnormalities and personality disorders. The district court explained:

> "[Bengston] entered the Sexual Offender Treatment Program in December 1999 and was discharged unsuccessfully in February 2000. He entered the Sexual Offender

5

Treatment Program again while incarcerated in October 2002 but was terminated in August 2003 for consistent rule violations, poor attitude and failure to progress. [Bengston] entered treatment again in March 2004 in an accelerated needs program. He completed the program in June 2004. [Bengston] then participated in a community-based treatment program in September 2004 during parole but was terminated in April 2005 due to offense-related behaviors, use of substances and possession of pornography."

Bengston's sexual offending behaviors "failed to desist despite repeated criminal sanctions and multiple attempts at sex offender treatment."

The district court concluded that the State proved beyond a reasonable doubt each element to establish Bengston was a sexually violent predator. Thus, the court committed Bengston to the custody of the Secretary for the Department for Aging and Disability Services for control, care, and treatment until he was safe to be at large.

ANALYSIS

Bengston's appeal brings the matter to us. He claims on appeal that the State used unreliable tests to assess his behavior. He also claims that the State failed to prove beyond a reasonable doubt that he was likely to commit repeat acts of sexual violence due to his mental abnormalities or personality disorders and that he has serious difficulty controlling his dangerous behavior.

As noted earlier, on appeal we view the evidence in the light favoring the State to determine whether a rational fact-finder could have found beyond a reasonable doubt that Bengston was a sexually violent predator. In doing so, we do not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

6

There are four elements the State must prove beyond a reasonable doubt in order to support a finding that a person is a sexually violent predator:

> "(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." *In re Care & Treatment of Williams*, 292 Kan. at 106; see K.S.A. 2020 Supp. 59-29a02(a).

Bengston does not dispute on appeal the district court's findings on elements (1) and (2). He admits he was convicted in Nebraska for an act of sexual violence as defined in K.S.A. 2020 Supp. 59-29a02(e). He also admits that he suffers from exhibitionistic disorder, voyeuristic disorder, and antisocial personality disorder, all of which he asserts are nonviolent diagnoses.

But Bengston disputes element (3): that he is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder. He also disputes element (4): that he has serious difficulty controlling his dangerous behavior.

Bengston's arguments on elements (3) and (4) center on the claimed inaccuracy of the actuarial instruments the State relied on to assess Bengston's risk of reoffending. He argues that the actuarial tests the State used were only 60-70 percent reliable. Moreover, the State's tests were conducted nearly two years before trial and, therefore, did not accurately establish his risk factor, particularly since he had not been convicted of a sexually violent crime in over 32 years.

The State presented evidence from both Dr. Flesher and Dr. Crane, who testified about the reliability of the actuarial instruments and tests used to assess Bengston's predicted risk of reoffending. Both doctors confirmed the actuarial instruments were

7

tested, reliable, peer reviewed, based on empirically sound scientific principles, and were widely accepted by mental health professionals. A similar argument was raised in *In re Care & Treatment of Cone*, No. 116,801, 2017 WL 3668891 (Kan. App. 2017) (unpublished opinion), *aff'd* 309 Kan. 321, 435 P.3d 45 (2019). As stated by a panel of our court, and as affirmed by our Supreme Court:

> "Cone argues that certain actuarial instruments used to assess his risk of reoffending should not have been admitted because they do not satisfy the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 573, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), criteria for admissibility of expert testimony. However, these tests are widely used and generally accepted, have been tested, and have ben subject to peer review and publication. The district court did not abuse its discretion in admitting them." *Cone*, 2017 WL 3668891, at *1.

With respect to element (3), both Dr. Flesher and Dr. Crane found Bengston in the "well above average" risk category to reoffend, placing him in the 99th percentile of all sex offenders. Both doctors opined Bengston was over seven times more likely to reoffend than the average sex offender. Dr. Crane testified Bengston's Static-2002R score suggested he was more than 53.3 percent likely to reoffend in his first five years in the community.

According to Dr. Flesher, the Stable-2007 assessment showed Bengston was in the "High Treatment Needs" category. The Acute-2007 assessment revealed Bengston was in the moderate priority for sex and violence risk and the moderate priority for general recidivism risk. The VRAG-R assessment showed Bengston was in the highest risk category for sexual and violent recidivism. Dr. Flesher determined Bengston's behavior suggested a repetitive pattern of exhibitionistic and voyeuristic behaviors. Dr. Flesher acknowledged the fact Bengston had only one conviction for a contact offense but noted there were other risk principles that increased his risk. Bengston admitted to four other

8

sexual contact offenses against preschool age victims though he was not convicted for those acts.

The KSVPA "does not require the State to prove that an offender *will* reoffend." (Emphasis added.) *In re Care & Treatment of Williams*, 292 Kan. at 109. Both doctors concluded Bengston was likely to reoffend because of his mental abnormality or personality disorders. While Bengston was convicted of only one sexual contact offense over 30 years ago, there was overwhelming evidence that Bengston was highly susceptible to reoffend. Reviewing the evidence in the light favoring the State, a rational fact-finder could find beyond a reasonable doubt Bengston was likely to commit repeat acts of sexual violence because of his mental abnormalities or personality disorders.

With respect to element (4), Bengston argues he is "incredibly adept at controlling his behavior—specifically any violent impulses that may exist." Dr. Flesher testified Bengston demonstrated repetitive behaviors and his participation in previous SOTPs did not prevent him from reoffending. Dr. Flesher explicitly found that Bengston had serious issues controlling his behavior. Dr. Crane also noted repeated and sustained levels of criminal behavior beginning in 1978.

The doctors disagreed in one respect. Contrary to Dr. Flesher, Dr. Crane diagnosed Bengston with pedophiliac disorder and fetishism. Dr. Crane reported actuarial testing showed Bengston was sexually responsive to the youngest female age group and, the younger the children, the more predictive pedophiliac interest is. Bengston's youngest contact victim—though he was not convicted of a crime related to the victim—was a two-year-old female. Dr. Crane explained that an individual cannot grow out of a pedophiliac condition. Dr. Crane ultimately opined Bengston has serious difficulty controlling his dangerous behavior to such a degree he poses a menace to the public health and safety.

9

Viewed in the light favoring the State, there was sufficient evidence to allow a rational fact-finder to find beyond a reasonable doubt Bengston had serious difficulty controlling his behavior.

The evidence as a whole, viewed in the light favoring the State, was sufficient to support a rational fact-finder's determination beyond a reasonable doubt that Bengston was a violent sexually predator.

Affirmed.